[No. 28188-1-II. Division Two. May 6, 2003.]

THE STATE OF WASHINGTON, *Respondent*, v. JASON M. CHRISTEN, *Appellant*.

---

[32] *State v. Neher*, 112 Wn.2d 347, 352-53, 771 P.2d 330 (1989).

828

*Daniel H. Bigelow* and *Michael S. Turner*, for appellant.
*David J. Burke*, *Prosecuting Attorney*, and *Lori Ellen Smith Miller*, *Deputy*, for respondent.

MORGAN, J. — The question in this case is whether Jason M. Christen is entitled to withdraw his plea of guilty to a charge of attempted second degree murder. The trial court answered no, and so do we.

In April 2000, Christen was incarcerated at a juvenile correctional institution. On April 20, 2000, he assaulted one of its officers. On April 25, 2000, the State charged him with attempted first degree murder. On August 21, 2000, the State reduced the charge to attempted second degree murder, and he entered an *Alford*[1] plea of guilty.

At the plea proceeding, Christen submitted a written plea form. It stated that his offender score was 9 1/2; that his standard range was 223 1/2–297 3/4 months; and that the prosecutor would recommend a sentence of "mid-standard range (260 3/4 months)."[2] The plea form also stated that if he were convicted of new crimes before sentencing, or if additional criminal history were discovered before sentencing, his standard range and the prosecutor's recommendation would increase but his plea of guilty would remain binding.

[1] *See North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *State v. Newton*, 87 Wn.2d 363, 552 P.2d 682 (1976).

[2] Clerk's Papers (CP) at 177.

After receiving the written plea form, the court orally interrogated Christen as follows:

Q [by the court]: . . . [D]o you understand that the standard range for this crime is 223 and a half months to 297 and three-quarter months? Do you understand that?

A [by Christen]: Yes, I understand.

Q: And [defense counsel], you've checked that and you know that to be true?

A: Yes, Your Honor.

Q: And you understand that the figures I just read were based on your criminal history and that if they find additional criminal history that that could change, *that could go up or down*? Do you understand that?

A: Yes, your Honor.[3]

Christen then indicated that he still wanted to plead guilty.

On September 8, 2000, a community corrections officer filed a pre-sentence report. He calculated Christen's true offender score as 7 1/2 and his standard range as 162–237 months.

The court held a sentencing hearing the same day. Both counsel agreed that the community correction officer's calculations were correct. After asserting that "we're released from our agreement to recommend the mid-point of the range based upon everybody's misconception of the numbers[,]"[4] the prosecutor recommended 237 months, the high end of the new standard range. Christen requested a sentence of 162 months, the low end of the new standard range. The trial court adopted the new range and imposed 216 months.

On August 1, 2001, Christen moved to withdraw his *Alford* plea. He alleged that the prosecutor had breached his agreement to recommend a "mid-standard range;"[5] that he had not known at sentencing that he could withdraw his

---

[3] Report of Proceedings (RP) (Aug. 21, 2000) at 6-7 (emphasis added).

[4] RP (Sept. 8, 2000) at 3-4.

[5] CP at 223.

guilty plea; and that if he had known, he "would have faced trial under the new circumstances."[6] The trial court denied his motion.

Christen argues on appeal that he had the right to withdraw his guilty plea because he did not understand his correct standard range when he decided to plead guilty. He asserts that he would have elected to encounter the risk of trial if he had known his standard range was lower, and thus that his decision to plead was not knowing, voluntary, and intelligent. The State responds that his motion to withdraw was properly denied because (1) *when he entered his plea*, he acted "knowingly and voluntarily with a full understanding that his offender score could change by the time sentencing was held"; or (2) *when he appeared at sentencing*, he "chose to continue . . . without objection after being told of the State's different (lower) sentencing recommendation."[7]

■ We agree with the State's first contention. In *State v. McDermond*,[8] we recently said:

[T]hree questions will determine whether a plea of guilty was initially invalid due to incomplete or inaccurate advice about one or more of its consequences. (1) Was the defendant incompletely or inaccurately advised about one or more consequences of the plea? (2) *Could* the defective advice have materially affected the defendant's decision to plead guilty? (3) *Did* the defective advice materially affect the defendant's decision to plead guilty? The first and third questions are factual. The second question is legal and reflects that some consequences are so minor (i.e., so "collateral") the law will not recognize them as affecting the decision to plead guilty. If the answer to any question is no, the remaining questions need not be reached, and the plea should be upheld. If the answer to all three questions is yes, the plea should be set aside.[9]

---

[6] CP at 219.

[7] Br. of Resp't at 10 (bolding and capitals omitted).

[8] *State v. McDermond*, 112 Wn. App. 239, 47 P.3d 600 (2002).

[9] 112 Wn. App. at 248, *noted in In re Pers. Restraint of Hemenway*, 147 Wn.2d 529, 535 n.4, 55 P.3d 615 (2002) (Chambers, J., dissenting).

■ Here, the answer to the first question is no. When Christen entered his plea, he was correctly and properly told that his standard range "could go up or down,"[10] and he manifested an understanding of that fact. He was not incompletely or inaccurately advised in the way that he now asserts; he expressly assumed the risk that his range might go up or down before sentencing; and he is not entitled to set aside his plea.

■ We would reach the same result if, alternatively, we were to use a "waiver" approach. An accused has the right, when pleading guilty, to be accurately informed of each material sentencing consequence,[11] including his or her standard range.[12] An accused waives that right if, knowing of its existence, he or she intentionally and voluntarily relinquishes it.[13] The trial court expressly told Christen that his standard range was then thought to be 223-297 months, but that it *could go up or down before sentencing.*[14] With knowledge of that fact, Christen opted to plead anyway. As a result, he intentionally and voluntarily relinquished his right to be accurately informed of his standard range at the time he entered his plea of guilty; he intentionally and voluntarily assumed the risk that his standard range might change before sentencing; and he waived whatever effect the incorrect standard range might have had on his decision to plead guilty.

■ Although the foregoing is dispositive, we note briefly our disagreement with the State's second contention (i.e., that Christen lost whatever right to withdraw his plea he

---

[10] RP (Aug. 21, 2000) at 6-7.

[11] *State v. Oseguera Acevedo*, 137 Wn.2d 179, 194, 970 P.2d 299 (1999).

[12] *McDermond*, 112 Wn. App. at 250; *State v. Moon*, 108 Wn. App. 59, 62, 29 P.3d 734 (2001).

[13] *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938) ("waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege"); *State v. Vy Thang*, 145 Wn.2d 630, 648, 41 P.3d 1159 (2002) ("[w]aiver is the voluntary relinquishment of a right"); *State v. Thomas*, 128 Wn.2d 553, 558, 910 P.2d 475 (1996); *State v. Kelly*, 60 Wn. App. 921, 929, 808 P.2d 1150 (1991).

[14] The written plea form does not clearly state that the range might go *down* before sentencing. Any deficiency was corrected, however, by the trial court's oral statements.

might otherwise have had by failing to object *at sentencing* to the trial court's use of a corrected standard range). In *State v. Walsh*,[15] the Supreme Court held that a defendant who does not know of his or her right to withdraw a guilty plea does not waive that right merely by failing to make a motion to withdraw during his or her sentencing hearing. This is consistent with the idea that a defendant who does not know of a right's existence cannot intentionally and voluntarily relinquish such right. Because nothing in this record shows that Christen knew during sentencing of his right to object to the trial court's use of a corrected standard range—indeed, he had been told when he pleaded that the range could go up or down—nothing in this record shows that Christen lost any right he might otherwise have had by not objecting on that basis.

Affirmed.

HOUGHTON and BRIDGEWATER, JJ., concur.

Reconsideration denied May 28, 2003.

Review denied at 150 Wn.2d 1027 (2004).

---

[15] 143 Wn.2d 1, 17 P.3d 591 (2001).